**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0329n.06
Filed: May 13, 2009

No. 08-1575

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| RONDIGO, L.L.C., DELORES MICHAELS, RONALD MICHAELS, and KING OF THE WINDS, INC., ) ) ) ) | |
| **Plaintiffs-Appellants,** ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. ) ) | |
| CASCO TOWNSHIP, MICHIGAN, ) ) | **O P I N I O N** |
| **Defendant-Appellee.** ) ) | |

Before:  MOORE and McKEAGUE, Circuit Judges; and FORESTER,[*] District Judge.

KAREN NELSON MOORE, Circuit Judge.  Plaintiffs-Appellants Rondigo, L.L.C., Delores Michaels, Ronald Michaels, and King of the Winds, Inc. (collectively, "Rondigo") appeal the order of the district court granting summary judgment in favor of Defendant-Appellee Casco Township ("Casco" or "the Township") in this § 1983 action.  After Casco failed to approve Rondigo's applications to operate a composting facility in Casco, Rondigo brought claims against Casco for violation of equal protection, due process, and First Amendment rights, and the district court granted Casco's motion for summary judgment on all claims.  On appeal, Rondigo argues that the district court erred (1) in deciding that Rondigo had not met the finality requirement for bringing

---

[*]The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

an equal-protection claim, (2) in granting summary judgment in favor of Casco on Rondigo's equal-protection claims based on gender discrimination, (3) in granting summary judgment in favor of Casco on Rondigo's equal-protection claims based on Casco's singling out of Rondigo for selective enforcement, (4) in granting summary judgment in favor of Casco on Rondigo's substantive-due-process claims, (5) in granting summary judgment in favor of Casco on Rondigo's procedural-due-process claims, and (6) in granting summary judgment in favor of Casco on Rondigo's First Amendment claims. For the reasons discussed below, we **AFFIRM** the district court's grant of summary judgment in favor of Casco Township.

## I. BACKGROUND

### A. Rondigo's Proposed Operation and the Regulatory Background

In April 2003, Delores Michaels, through her company Rondigo, purchased a parcel of property of approximately forty acres located at 5816 Bethuy Road in Casco Township on which she intended to conduct a commercial yard-waste-composting operation. Although the land was zoned industrial, Michaels was aware that Rondigo would need to obtain special land use approval from Casco before the land could be used for the composting operation.

The Township had first adopted commercial-composting standards in 1990, and these same standards were in effect at the time of Rondigo's purchase in 2003. The 1990 ordinance allowed commercial composting as a special land use in industrial zones pursuant to § 10.03K of the Casco Township zoning ordinance. Also as part of the zoning ordinance, Casco adopted standards and procedures for approval of a special land use. Section 13.14 of the ordinance established standards and procedures for approval of site plans, required for all special uses. Therefore, under § 10.03K, a composting facility may be permitted in an industrial district only if (1) a special land use permit

2

is granted, (2) the conditions and standards in § 10.03K of the zoning ordinance are met, and (3) a site plan is approved as in compliance with § 10.03K under the standards and procedures provided by § 13.14.

Since before 1990, another commercial composting facility, Indian Summer, had been operating on Bethuy Road in the Township. Indian Summer was not subject to the 1990 composting ordinance because it was a prior nonconforming use. Indian Summer and Casco had entered into a consent decree in 1993 to resolve nuisance claims regarding odor emanating from the Indian Summer facility. Indian Summer's principal, Frederick Thompson, testified that Indian Summer had made various improvements to the operation, including moving the operation to a different portion of the property when part of the land was sold. The Township Supervisor, Karen Holk, testified that it was her opinion that Indian Summer was "an existing non conforming use that was legal at the time." Record on Appeal ("ROA") Vol. II at 178 (Holk Dep. at 61). The Chair of Casco's Planning Commission, William Ruemenapp, also testified that he believed that Indian Summer was "grandfathered" because composting was not a special land use before 1990. ROA Vol. II at 301 (Ruemenapp Dep. at 12).

**B. Rondigo's Initial Applications**

In June 2003, Rondigo retained an engineer, Philip Porte, to prepare engineering plans for Rondigo's special land use and site plan applications. At that time, Porte recommended that Rondigo complete a wetlands evaluation before proceeding with any construction activity. Also in preparation for obtaining special land use approval, Rondigo submitted an application to the Road Commission to construct driveway entrances and discharge storm water from a proposed detention pond.

On December 1, 2003, Rondigo submitted a special land use application and a site plan review application to Casco for approval. Pursuant to Section 15.05 of the Casco special land use procedures, the Planning Commission was required to hold a public hearing on Rondigo's request for special land use approval. At the Planning Commission's regular meeting on December 16, 2003, the Planning Commission scheduled a public hearing on Rondigo's application for the next regular meeting on January 20, 2004.

Before the January hearing, the planning consultants hired by the Township, Birchler Arroyo Associates, Inc. ("Birchler"), recommended that the special land use and site plan review applications not be approved until Rondigo had satisfactorily addressed several issues noted in the review. At the hearing on January 20, many community members expressed opposition to the proposed composting operation. The Planning Commission informed Michaels that approvals and studies from various other commissions would be necessary before approval of the applications. Also at the hearing, Birchler suggested that Casco hire an independent drainage and compost engineer to review the site plan. The Planning Commission then tabled Rondigo's applications pending the recommendation of a private drainage and compost engineer.

On February 2, 2004, Rondigo, through Porte, submitted revised construction plans to the Planning Commission in response to Birchler's January 13 recommendations. Porte requested that the revised plans be reviewed at the Planning Commission's February 2004 meeting. Meanwhile, the Drain Commission determined that it could not approve the plans Rondigo had submitted, and the Road Commission requested additional information from Rondigo. On February 11, 2004, Birchler completed a review of Rondigo's revised plan, again concluding that they could not recommend approval of the site plan and listing several issues to be addressed.

4

At the Planning Commission's February 17 meeting, Rondigo's applications were again tabled pending reviews from the Drain Commission, the Road Commission, and the independent composting engineer hired by Casco. After the meeting, on February 19, 2004, the Road Commission sent Rondigo correspondence stating that it would require certain improvements to Bethuy Road before issuing a permit to Rondigo for use of the road. Additionally, the Township's independent composting engineer transmitted his review of the composting plans to Birchler and Holk. The independent review recommended denial of the applications.

Finally, on April 16, 2004, Michaels's attorney sent a letter to Casco requesting that the Planning Commission table any action on the special land use application until the Commission's regularly scheduled meeting in September 2004. The reason given was that Michaels needed to take time to care for her dying mother. The letter also stated that Michaels was looking for alternative sites for the composting operation and offering the Bethuy Road property for sale.

On December 1, 2004, Robert Rynk, an engineer hired by Rondigo, advised Michaels and Porte that he felt that Casco's denial of the applications and requests for additional details were reasonable:

> I have reviewed [Casco's independent composting expert's] review of the proposed "Bethuny Road" [sic] composting facility . . . . At this point, I would not consider it as a negative review. Primarily, [the expert] is recommending that you provide Casco Township with more details about the site and how you plan to operate it and market the product. That does not seem unreasonable to me, looking at it from the Township's perspective. Most of the details that he is asking for are reasonable. If I were in the Township boards' collective shoes, I would not accept your composting experience as enough proof that things will go smoothly. They have already heard testimony from your neighbors that maybe it won't.

ROA Vol. I at 655 (Rynk Email 12/1/2004). As discussed below, Rondigo did not submit any revised applications to Casco until well into 2005.

5

## C. Amendment of the Composting Standards

In June 2004, while Rondigo's applications were tabled, Casco began the process of amending the zoning ordinance's commercial composting standards by directing Birchler to research and prepare amendments to the ordinance. In amending the standards, Casco relied heavily on Rondigo's site plan and the other materials submitted by Rondigo. Although the Township supervisor admitted that Rondigo's applications did prompt Casco to reevaluate its composting standards, she also explained that the rationale for the amendment was to update the almost fifteen-year-old standards:

> Q. What prompted the amendment of [the composting ordinance]?
>
> A. At that time, we had—Mrs. Michaels had applied for special land use and then she said we received the letter that she at that point was looking at other sites and it was for sale and she was coming back in September. So we hadn't looked at our ordinance on composts in a long time; I think the last time was probably in the early nineties. So we felt at this time we should look at them and maybe get some more information and upgrade them. And so we looked at it.

ROA Vol. I at 622 (Holk Dep. at 24). This rationale was supported by the deposition testimony of one of the planners employed by Birchler, who noted that the existing standards "originated from 1990 when commerical composting was in it's [sic] infancy and regulations were only just being adopted for the first time by many communities at that time" and stated, "We were not focus[]ing on any particular site or particular application rather we were focusing on developing sound standards for composting in Casco industrial district." ROA Vol. I at 615-16 (Wenk Dep. at 27-28).

Casco reviewed drafts of the proposed amendment at its meetings in August, September, and October 2004. As required by the Township Zoning Act, Mich. Comp. Laws § 125.286b (repealed 2006), notice was made in *The Bay Voice* newspaper on October 13, 2004, of a public hearing on

6

the proposed amendment set for October 19, 2004. Rondigo was not notified individually of the proposed amendment or the scheduled hearing. After the public hearing, the proposed amendments were adopted, and notice of the adoption was published in *The Bay Voice* on December 15, 2004. The amended ordinance became effective on December 22, 2004.

## D. Rondigo's Subsequent Actions

Rondigo apparently did not know about the proposed amendments until Birchler forwarded the amended composting standards to Porte on January 14, 2005. Porte met with Birchler representatives on January 25 to discuss the new ordinance.

On April 1, 2005, the St. Clair County Circuit Court entered a stipulated temporary restraining order resolving Casco's motion for an injunction against Rondigo for allegedly beginning composting construction without Casco's approval.

On June 6, 2005, Rondigo was advised by its wetlands consultant that, because the site plan affected several bordering wetlands, a wetlands delineation should be performed and Rondigo should downsize the project to avoid the wetlands. Immediately following this communication, Porte faxed a letter to Casco advising the Township that Rondigo would not be able to submit site plans for the June Planning Commission meeting due to the need to complete the wetlands delineation work and that Rondigo hoped to submit plans for the July meeting.

## E. Rezoning of the Blue Star Property

At some point in 2005, in order to comply with the amended ordinance, Rondigo decided to purchase an adjacent parcel of land, known as the Blue Star property, which also was zoned industrial. Meanwhile, in March 2005, Casco began the process of rezoning property in the southwestern corner of Casco Township, including the Blue Star property, from industrial to

commercial. The rationale for this decision is disputed by the parties. Rondigo claims that the Township decided to rezone the property only after it learned of Rondigo's plan to purchase the property when the then-owner, Michael DesJardine, requested that Casco remove a notice of lis pendens from the property. The only evidence cited to support this claim, however, while establishing that Township Supervisor Holk did learn of Rondigo's plan to purchase the property when DesJardine requested removal of the lis pendens, does not establish that this was the motivation for the rezoning or even that Holk learned of Rondigo's plans before the rezoning process had begun. ROA Vol. II at 179 (Holk Dep. at 65) (stating that she believes she learned of Rondigo's plan "near the end of 2005," which was after the rezoning was complete).

Casco, on the other hand, maintains that the rezoning of the Blue Star property was merely one part of a rezoning encompassing several properties and was consistent with the Township's master land use plan. This is supported by a memorandum prepared by Birchler in November 2006. On March 11, 2005, the Township Clerk authored a letter regarding the rezoning of four parcels of property from industrial to general business and recreational open space. The letter gave notice of the proposed rezoning and of a public hearing scheduled for April 19, 2005.

This notice was sent to several adjoining property owners, including Rondigo and DesJardine. Rondigo claims that it never received this notice because the notices for Rondigo and DesJardine, as well as another landowner, all were sent to the wrong address. There is no evidence, however, that the address listed on the notice letter was not the correct address for Rondigo. The only evidence offered in support of Rondigo's claim is Michaels's deposition testimony that she did not recall how she learned of the rezoning, and the testimony of Frederick Thompson, the principal of Indian Summer, stating that he had not received any zoning-change notices from Casco in the past

8

two years. There is no evidence, however, that Indian Summer was even an adjoining landowner who would be entitled to individual notice, and neither Thompson nor Indian Summer appear on the list of property owners to whom notice was mailed. Notice of the hearing also was published in the *The North Macomb Voice* newspaper sometime before April 20, 2005.

The Casco Board of Trustees adopted the proposed rezoning on June 7, 2005. On October 4, 2005, Casco's attorney wrote to Rondigo's attorney advising him that Casco had learned that Rondigo was planning to purchase the Blue Star property and informing him that the property was zoned commercial and also was subject to the terms of a permanent injunction previously entered in St. Clair County Circuit Court. It does not appear that Rondigo actually purchased the Blue Star property until almost one year later, as the only evidence reflecting Rondigo's ownership of the property is a memorandum of land contract, signed by Michaels and DesJardine, dated August 10, 2006, and recorded with the county register of deeds on September 8, 2006.

## F. Rondigo's Resubmittal and Subsequent Actions

Meanwhile, on July 13, 2005, Rondigo submitted revised applications for special land use and site plan approval, to be subject to the new composting standards, and asked for consideration at the August Planning Commission meeting. On August 16, 2005, Birchler completed a review of the applications, again recommending that the applications not be approved and citing several issues to be addressed. The same day, Rondigo submitted revised construction plans to the Drain Commission.

On September 19, 2005, Casco's independent composting engineer completed a review of the site plans. He recommended denial of the applications but proposed actions to address each problem, focusing on ensuring low-odor operations. On the same day, the Drain Commission

completed its review and stated several issues that would need to be addressed before it would give approval. A public hearing was held on September 20, 2005, at which several community members expressed objections to the composting facility.

On September 23, 3005, Rondigo filed with the Casco zoning board of appeals requests for three variances from the composting ordinance. All three requests were denied by the board.

On October 6, 2005, Rondigo's attorney wrote to the Planning Commission addressing the issues raised by Birchler and the independent composting expert. The letter stated that Rondigo "is not asking for approval of its Application at this time. It simply wants to update the Commissioner of the status of its Application." ROA Vol. I at 869.

At the November 15, 2005, meeting of the Planning Commission, the outstanding issues were discussed and the Commission tabled Rondigo's applications until Rondigo requested to be placed back on the agenda. Rondigo never made such a request.

## G. District Court Proceedings

On December 13, 2005, Rondigo filed this lawsuit against Casco, alleging claims under § 1983 for violation of equal protection, substantive and procedural due process, and First Amendment rights and alleging state-law claims of fraudulent misrepresentation, negligent misrepresentation, and silent fraud. Casco filed a motion for summary judgment in April 2007. On March 28, 2008, the district court entered an order granting summary judgment for Casco on all claims.[1] Rondigo filed a timely appeal.

---

[1]Because Rondigo did not address the state-law claims in its response to Casco's motion for summary judgment, the district court considered them waived. Rondigo does not appeal this aspect of the district court's order.

## II. ANALYSIS

### A. Standard of Review

We review de novo the district court's grant of summary judgment. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 433 (6th Cir. 2009). Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the grant of summary judgment, we must "view all facts and inferences in the light most favorable to the non-moving party." *Hamilton*, 556 F.3d at 433. "[T]here can be 'no genuine issue as to any material fact'" when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Equal Protection

Rondigo argues that Casco's actions violated Rondigo's right to equal protection by enforcing the zoning laws against Rondigo but not enforcing these laws against Indian Summer. Under the Equal Protection Clause, "[t]he states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Rondigo's equal-protection claims are based on the second ground, that Casco discriminated against Rondigo based on the gender of its principal, Delores Michaels, and the third ground, otherwise known as a "class-of-one" theory. Both of these claims, however, stem from the allegation that Rondigo was treated differently than Indian Summer, which Rondigo asserts was a similarly situated entity. Because we conclude that Rondigo and Indian Summer were not similarly

11

situated, we conclude that the district court did not err in granting summary judgment on Rondigo's equal-protection claims.[2]

To establish its gender-discrimination claim, Rondigo urges us to apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is used for disparate-treatment claims under Title VII of the Civil Rights Act of 1964. *See, e.g.*, *Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004); *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 275 (6th Cir. 2003). Under this framework, the plaintiff has the burden of establishing a prima facie case of discrimination. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007). "Generally, at the summary judgment stage, a plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id*. at 528 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Such an inference generally requires that the plaintiff prove that it was treated differently than a similarly situated entity who was not a member of the protected class. *See, e.g.*, *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). Similarly, where an equal-protection claim is not based on the government's burdening of a fundamental right or targeting of a suspect class, the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for

---

[2]Rondigo argues that the district court erred in finding that Rondigo had not met the finality requirement applicable to certain equal-protection claims. "Where a plaintiff challenges a zoning regulation 'as applied,' as opposed to making a facial challenge to the regulation, the courts have held that the *Williamson* final decision requirement must be met." *Seguin v. City of Sterling Heights*, 968 F.2d 584, 588 (6th Cir. 1992). Because, however, we conclude that Rondigo's equal-protection claims are meritless, we need not decide whether the finality requirement was met.

12

the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *accord Engquist v. Or. Dep't of Agric.*, --- U.S. ---, 128 S. Ct. 2146, 2153 (2008). Therefore, both of Rondigo's claims are based on the argument that Indian Summer and Rondigo were similarly situated.

Rondigo's argument, however, is belied by the facts of this case. In determining whether entities are similarly situated, the court should "not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). There are very relevant differences between Rondigo and Indian Summer. Rondigo was an entity attempting to begin a composting operation in Casco, whereas Indian Summer had been operating since before composting standards were enacted in 1990 and therefore was a nonconforming use, exempt from these standards. Casco further points out that Indian Summer was subject to a consent decree entered into in 1993, making it subject to different regulations than Rondigo.

Rondigo argues that Indian Summer was similarly situated, because Indian Summer had lost its nonconforming use by making multiple changes to its operation over the years. Rondigo's primary evidence in support of this assertion is the deposition of Indian Summer's principal, Frederick Thompson, who testified that Indian Summer had made various improvements to the operation, including moving the operation to a different portion of the property when part of the land was sold. According to Rondigo, this violated Casco's nonconforming-use ordinance, which states, "No such nonconforming use shall be moved in whole or in part to any other portion of the lot or parcel occupied by such use." ROA Vol. II at 391 (Nonconforming Use Ordinance). Rondigo admitted at oral argument that violation of this ordinance does not cause an entity to lose nonconforming-use status automatically; some further government action is required. It is clear,

13

however, that Casco believed Indian Summer was a nonconforming use. The Township Supervisor, Karen Holk, testified that it was her opinion that Indian Summer was "an existing non conforming use that was legal at the time." ROA Vol. II at 178 (Holk Dep. at 61). The Chair of Casco's Planning Commission, William Ruemenapp, also testified that he believed that Indian Summer was "grandfathered" because composting was not a special land use before 1990. ROA Vol. II at 301 (Ruemenapp Dep. at 12). This determination was consistent with Michigan's Township Zoning Act in effect at the time, which mandated that local zoning ordinances preserve a property owner's right to "reconstruction, extension, or substitution of nonconforming uses upon reasonable terms." Mich. Comp. Laws § 125.286 (repealed 2006); *see also Century Cellunet of S. Mich. Cellular, Ltd. P'ship v. Summit Twp.*, 655 N.W. 2d 245, 250 (Mich. Ct. App. 2002) (holding that the Township Zoning Act "requires a township to *permit* completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon reasonable terms"). The composting standards did not apply to Indian Summer, as a nonconforming use, in the same way that they would apply to a new proposed operation such as Rondigo. Overall, Rondigo has not raised a genuine issue of fact as to whether Rondigo and Indian Summer were similarly situated with respect to application of the composting ordinance.

Rondigo also appears to make a facial challenge to the amended composting standards, arguing that the amended ordinance "was specifically designed to prevent plaintiffs' intended use of the land." Rondigo Br. at 35. Rondigo, however, offers no evidence of this motivation. Although it appears that Rondigo's applications did bring to light problems with the old composting standards, this does not mean that Casco had no rational basis for updating the ordinance. Both Holk and a planner with Birchler explained that the amendments were intended to update old standards. Holk

14

further testified that she believed Rondigo was no longer seeking approvals for its operation, and this testimony is supported by the letter from Rondigo's attorney offering to sell the Bethuy Road property. Moreover, it was not irrational for Casco to consider the plans recently submitted by Rondigo in crafting the guidelines, as these plans would have pointed out problem areas in the existing standards. Rondigo simply has not presented evidence from which a reasonable jury could conclude that the composting standards discriminated against Rondigo without a rational basis.

## C. Substantive Due Process

We also conclude that the district court did not err in granting summary judgment on Rondigo's substantive-due-process claims. In the zoning context, to state a claim of substantive due process, "a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008). "Property rights are created and defined by independent sources such as state law and not by the Constitution." *Id*. Rondigo claims that Casco violated Rondigo's substantive-due-process rights by arbitrarily and capriciously depriving Rondigo of its interests in obtaining a special land use permit, in the existing composting standards, and in the zoning of the Blue Star property as industrial.

### 1. Special Land Use Approval

To establish a property interest in the particular use of its land, the plaintiff "must prove that [the government body] did not have the discretion to deny [the plaintiff's requested use] if he complied with certain minimum, mandatory requirements." *Silver v. Franklin Twp., Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). The district court found, and Casco does not dispute, that Rondigo did have a property interest in the use of its land as proposed in the special land use

15

application, because the approval of a special land use application is not a matter of discretion under Michigan law when certain standards have been met.

Rondigo argues that the district court erred in finding no question of fact as to whether Casco was arbitrary and capricious in requiring repeated revisions to the site plan. This argument must fail. Casco provided Rondigo with reasons for Casco's failure to approve the applications at every step of the proceedings, providing specific issues remaining to be addressed. Given the public concern expressed at the hearings, it was reasonable for Casco to scrutinize carefully Rondigo's applications. Even Rondigo's own expert recognized that Casco's concerns were legitimate:

> I have reviewed [Casco's independent composting expert's] review of the proposed "Bethuny Road" [sic] composting facility . . . . At this point, I would not consider it as a negative review. Primarily, [the expert] is recommending that you provide Casco Township with more details about the site and how you plan to operate it and market the product. That does not seem unreasonable to me, looking at it from the Township's perspective. Most of the details that he is asking for are reasonable. If I were in the Township boards' collective shoes, I would not accept your composting experience as enough proof that things will go smoothly. They have already heard testimony from your neighbors that maybe it won't.

ROA Vol. I at 655 (Rynk Email 12/1/2004). Aside from the fact that the approval process took a long time, Rondigo provides no evidence that Casco's requests for further reviews were arbitrary and capricious.

### 2. Composting Standards

The district court found that Rondigo did not have a protected property interest in using its land for composting under the ordinance, because approval of composting activity is a matter of the discretion of the Planning Commission. As the district court noted, § 10.03K of the zoning ordinance states that composting facilities "may be permitted in Industrial districts only, subject to the issuance of a Special Land Use Permit and compliance with the following conditions and

16

standards." ROA Vol. I at 508-09 (1990 Composting Ordinance). Rondigo's brief, however, entirely ignores the requirement that Rondigo have a property interest in using its land for composting under the ordinance in order to state a due-process claim, arguing only that Casco's amendment of the composting standards was arbitrary and capricious. Because a property interest is a necessary element of the claim, and Rondigo does not contest the district court's finding that it had no cognizable property interest under the ordinance's composting standards, we consider the issue waived and affirm the district court on this claim. *See Golden v. Comm'r*, 548 F.3d 487, 493 (6th Cir. 2008).

### 3. Zoning of the Blue Star Property

Regarding the zoning of the Blue Star property, Rondigo had no protected interest because it did not own the property until almost one year after it was rezoned. Although "[a] property owner arguably has a property right where the government *rezones* an existing property," *Braun*, 519 F.3d at 573, this interest generally does not attach to property that is owned by someone else. In fact, at the time the land was purchased by Rondigo in 2006, Rondigo already knew of the rezoning. Further, under Michigan law, an interest in an existing zoning ordinance vests only when a building permit has been issued to the owner of the property before the rezoning and substantial work has been done on the property. *City of Lansing v. Dawley*, 225 N.W. 500 (Mich. 1929); *Schubiner v. W. Bloomfield Twp.*, 351 N.W.2d 214 (Mich. Ct. App. 1984).

Rondigo merely asserts that the evidence shows that Casco knew of Rondigo's plans to purchase the property when Casco decided to rezone the property, but offers no evidence to support this claim. The testimony of Karen Holk, cited by Rondigo, does not show that the rezoning occurred after Holk learned of the planned purchase. Even if, however, the rezoning decision was

17

spurred by Rondigo's plans to purchase, this would not change the fact that Rondigo did not have a property interest in the particular use of land that it did not even own. Rondigo offers no authority to support the proposition that a property interest vests when one makes plans to purchase land. Rondigo has not raised a genuine issue of material fact as to whether it had the requisite property interest to challenge the zoning classification of the Blue Star property.

For these reasons, summary judgment was properly awarded to Casco on Rondigo's claims of denial of substantive due process.

## D. Procedural Due Process

Rondigo also claims denial of procedural due process, asserting that Casco deprived Rondigo of its property interest in composting both through the ordinance amendments and in the industrial zoning of the Blue Star property without proper notice. We conclude that the district court did not err in granting summary judgment on Rondigo's procedural-due-process claims. "When an individual is deprived of a protected property or liberty interest, 'procedural due process generally requires that the state provide a person with notice and an opportunity to be heard' before such a deprivation occurs." *Braun*, 519 F.3d at 572. As discussed above, Rondigo has not challenged the district court's finding that it had no property interest affected by the ordinance amendments, and Rondigo has not established that it had a property interest in the Blue Star property at the time of the rezoning. Because the presence of a protected liberty or property interest is a necessary element of a procedural-due-process claim, we conclude that Rondigo has not established a genuine issue of material fact as to whether its right to procedural due process was violated.

18

**E. First Amendment**

Finally, Rondigo claims that Casco violated its constitutional rights by retaliating against Rondigo for Rondigo's participation in conduct protected by the First Amendment. We conclude that the district court did not err in granting summary judgment to Casco on this claim. To state a claim for retaliation, a plaintiff must establish three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). "If the plaintiff meets this burden, the burden of production shifts to the defendant." *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008). If, however, "the defendant can show he would have taken the same action in the absence of the protected activity, he is entitled to summary judgment." *Id*.

Rondigo argues that it engaged in protected activity by expressing to Casco Rondigo's intent to seek redress for alleged constitutional violations and that Casco retaliated by filing an unnecessary suit against Rondigo in state court seeking to enjoin composting activities on Rondigo's property, by rezoning the Blue Star property, and by reactivating a suit against DesJardine, the then-owner of the Blue Star property.

Rondigo has not presented evidence sufficient to meet the requirements of *Thaddeus-X*. First, regarding protected conduct, Rondigo merely alleges that it expressed to Casco its intent to

19

seek redress for constitutional violations. Even if the holding of an intent to engage in litigation was protected conduct, Rondigo provides no evidence that this intent was communicated to Casco or that Casco had any knowledge of this intent before this suit was filed on December 16, 2005, long after any of the allegedly retaliatory conduct occurred. Without knowledge of the protected conduct, such conduct could not have been a motivating factor in any of Casco's alleged retaliatory action. *See Thaddeus-X*, 175 F.3d at 387 n.3. Further, Rondigo presents no evidence indicating that Rondigo's lawsuit, or threatened lawsuit, was a substantial motivating factor in any of Casco's decisions.

### III. CONCLUSION

For these reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Casco Township.