NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0351n.06

No. 16-4034

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DAWN GUBA; SHAWN WARD, | ) | |
| | ) | **FILED** |
| Plaintiffs – Appellants, | ) | Jun 21, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| HURON COUNTY, OHIO; HURON COUNTY | ) | ON APPEAL FROM THE |
| DEPARTMENT OF JOB AND FAMILY | ) | UNITED STATES DISTRICT |
| SERVICES; HURON COUNTY CHILD | ) | COURT FOR THE NORTHERN |
| SUPPORT ENFORCEMENT AGENCY; JILL | ) | DISTRICT OF OHIO |
| NOLAN; LENORA MINOR, as an agent for | ) | |
| Huron County; HEATHER LOVE CARMAN, | ) | |
| As an agent for Huron County, | ) | |
| | ) | |
| Defendants – Appellees. | ) | |
| | ) | |

BEFORE:    KEITH, BATCHELDER, and SUTTON, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  This case arises out of the repeated, failed attempts on the part of the Child Support Enforcement Agency of Huron County, Ohio ("Huron CSEA") to properly register Plaintiffs-Appellants' ("Plaintiffs") foreign child support order.  Plaintiffs Dawn Guba ("Guba") and Shawn Ward ("Ward") appeal the district court's grant of summary judgment in favor of Defendants-Appellees on their claim brought under 42 U.S.C. § 1983 alleging a violation of Plaintiffs' right to procedural due process.  The district court granted summary judgment in favor of Defendants because it found that there was "no evidence in the record that Ward made a payment to the Agency that it did not remit to Guba," and therefore "a reasonable jury could not find that defendants' misconduct deprived the plaintiffs of their protected property interests." *Guba v. Huron Cty., Ohio*, No. 3:13CV592, 2016 WL 3952119, at

*1 (N.D. Ohio July 22, 2016).  On appeal, Plaintiffs argue that the district court misapplied the summary judgment standard and genuine issues of material fact exist as to whether Defendants deprived Plaintiffs of a property interest in the form of child support payments and garnished tax returns.  For the following reasons, we **AFFIRM**.

## I.

Plaintiffs were married and divorced in Michigan, where a Michigan court entered a child support order requiring Ward to make child support payments to Guba.  Following the divorce, both Guba and Ward separately moved to Ohio, and Guba sought help from the Huron CSEA to get the foreign child support case registered and enforced in the State of Ohio.  From May 2006 until November 2008, Plaintiffs were able to pay and receive child support through the Huron CSEA without incident.

The problem giving rise to this litigation began after Plaintiffs sought to modify their child support obligations due to a change in Ward's employment status.  The initial modification effort appeared to be a success because judgment was entered by the Huron County Court of Common Pleas to reduce Ward's support obligations from $942 per month to $558 per month on October 16, 2006.  However, Defendant Heather Carman ("Carman"), a child support attorney for the Huron CSEA, received a note from a Huron County Court of Common Pleas magistrate on September 19, 2008 stating that Plaintiffs' previous child support order was originally registered for enforcement purposes only.  Consequently, Carman believed that "the Huron County court did not have jurisdiction to modify Ward's support obligation." *Guba*, 2016 WL 3952119, at *2.

Carman initially attempted to correct the error with two filings.  On October 22, 2008, Carman filed a petition for registration of modification and continuing exclusive jurisdiction of

foreign support order.[1] On November 19, 2008, she filed a motion to modify the existing foreign support order pursuant to Ohio Rev. Code Ann. § 3115.46 (repealed 2016). A non-oral hearing was held before a magistrate on these issues, and, on May 7, 2009, the Huron County Court of Common Pleas dismissed the registration petition and denied the motion to modify the order.

Following this first failed attempt to properly register the support order, Carman continued, to no avail, to remedy the defect. On June 10, 2009, Carman again filed a motion to modify the registered foreign support order. On September 28, 2009, this motion was dismissed without prejudice because the parties failed to comply with Ohio Rev. Code Ann. § 3115.48 (repealed 2016). On April 19, 2012, Carman filed a petition for registration of foreign support order. This petition was dismissed on July 30, 2012.

On August 20, 2012, the Huron CSEA sent a notification to the Ingham County "Friend of the Court" in Michigan stating that it had "dismissed all actions in this case." The Huron CSEA requested that Michigan enforce the case, and Michigan replied that it too had closed its case file in 2007. From August 20, 2012 forward, Plaintiffs were without active enforcement of their child support order in any state.

On February 11, 2013, following the closure of their case, Plaintiffs filed a complaint with the Ohio Attorney General's office and the Ohio Department of Jobs and Family Services. Consequently, the Huron CSEA agreed to obtain an original copy of the support order from Michigan and make another attempt to file the support order. Carman then filed a petition to register foreign support order for controlling order and continuing exclusive jurisdiction. This petition was also dismissed, although it is not clear why based on the record. *See Guba*, 2016 WL 3952119, at *9.

---

[1] After conducting legal research, Carman concluded that this motion was not the correct way to fix the jurisdictional error. On November 18, 2008, she filed a motion to vacate this petition.

Plaintiffs filed this action on March 19, 2013. In their amended complaint, Plaintiffs alleged that they were deprived of protected property interests because "all child support payments stopped as of 2009, without a penny more ever paid to Guba, while Ward was still paying into Huron County and Huron CSEA accounts." Further, Plaintiffs claimed that "Guba has not received child support services from Huron County since 2009, even though payments continued to be taken from Ward."

To support these damages, Plaintiffs present the depositions of Guba, Ward, Carman, and CSEA investigator Stacey Rader ("Rader"). According to Plaintiffs, unpaid damages include: (1) payments made by Ward to the Huron CSEA that Guba did not receive; and (2) tax returns that were intercepted by the Huron CSEA but not paid to Guba.

During Guba's deposition, she was asked if she had reason to dispute Defendants' claim that all money paid by Ward was disbursed to her. Guba responded, "I don't believe that." Asked if she had information or evidence to support her belief, Guba stated, "I don't . . . Just [Ward's] word that he has gone up there and paid, or when all this started he could—they wouldn't let him pay, so that's why he started paying me [directly in cash]."

Guba was also asked why she believed that tax intercepts were taken from Ward. She responded, "my son came home and told me that his dad received an income tax refund." In 2009, when Guba stated to the agency over the phone that she hadn't received any payment from Ward's taxes, the agency told her that she "was supposed to receive the money" because it was "in the system."

Ward testified in regard to payments that he allegedly made to the Huron CSEA prior to his employment at Mickey Mart in December 2007. His testimony reads as follows:

Q.  While you were laid off between Tech System and Mickey Mart, did you make any child support payment?

A.  I believe I did.

Q.  Did you make those directly to Huron County CSEA?

A.  Yeah, I think I brought it up there and paid out at Shady Lane.

Q.  Did you ever get receipts for those payments?

A.  I'm sure I did when I went in there and paid, I have no idea whatever happen [sic] to them. I figured they knew what was going on, so.

Q.  Do you have any reason to doubt that Ms. Guba, or any reason to suspect that Ms. Guba did not receive those payments during that time?

A.  Well, there was a couple times I would come in there and make a payment and then she'd call me, like, a week later and asked me, you know, she's be like you know, "Well, where's my money, I thought you made a payment?" And I was like, "I absolutely went up there and made a payment." And then she would call up and they'd say something or another happened and then it would be delayed and she'd get the money, like, a month later, you know.

Q.  When you would make a payment in person at Huron County, do you know how Ms. Guba would receive that payment?

A.  No, that was—that's on her.

Later in the deposition, Ward was asked if he received a receipt after making a payment to the CSEA.  He responded, "[y]es. Usually when I would come out there and give a cash payment they would give me a receipt."  However, Ward could not recall any amount he paid in cash or estimate the dates or time periods when he made cash payments.  Ward's only reference to tax returns was that, "my tax return stuff have [sic] been lost over the years and I wouldn't even know how to go about getting them."

Huron CSEA investigator Rader testified to a call placed by Ward to the Huron CSEA. On that call, Ward asked about payments that he made to the agency that he believed Guba had not received.

Carman testified in regard to the call placed by Guba in January 2009 to the Huron CSEA, in which Guba inquired about the status of Ward's tax returns and why she wasn't receiving them.

To support their motion for summary judgment, Defendants produced a payment history report that documented monthly payment receipts, obligations, withholdings, and disbursements that spanned from the beginning of Plaintiffs' case through February 2013. The report indicates that from November to December 2008, no payments were made by Ward and no funds were disbursed to Guba by the Huron CSEA. In 2009, Ward paid $9,363, and $9,363 was disbursed to Guba by the Huron CSEA. In 2010, Ward paid $4,800, and $4,800 was disbursed to Guba by the Huron CSEA. In 2011, Ward made no payments, and no funds were disbursed to Guba by the Huron CSEA. Defendants have produced no documentation of, and no testimony referencing, any payments made by Ward since 2013 to the Huron CSEA.

## II.

This case was originally filed in district court on March 19, 2013, alleging nine total counts that included claims under both state and federal law. On December 13, 2013, the district court granted Defendants' motion to dismiss all counts on the pleadings. On appeal in 2015, this Court affirmed in part and reversed in part, remanding for further proceedings on Plaintiffs' § 1983 claim alleging a violation of procedural due process. On remand, the district court granted Defendants' motion for summary judgment on Plaintiffs' procedural due process claim because there was "no evidence in the record that Ward made a payment to the Agency that it did not remit to Guba," and therefore "a reasonable jury could not find that defendants' misconduct deprived the plaintiffs of their protected property interests." *Guba*, 2016 WL 3952119, at *1. Plaintiffs filed a timely notice of appeal on September 8, 2016.

**III.**

"We review the district court's grant of summary judgment de novo." *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 433 (6th Cir. 2009). At summary judgment, the question is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute of any material fact when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At the summary judgment stage, we must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations and quotation marks omitted).

**IV.**

The district court granted Defendants' motion for summary judgment on Plaintiffs' procedural due process claim. The applicable legal standard, as outlined in Plaintiffs' previous appeal to this Court, involves a three-step approach.

> First, is there a legally protected property interest? If so, then second, were Plaintiffs deprived of that property? And if so, then third:
>
> 'In situations where the government feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking. Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the [protected] interest at stake, or where the government is truly unable to anticipate and prevent a random deprivation of a [protected] interest, postdeprivation remedies might satisfy due process.'

*Guba v. Huron Cty.*, 600 F. App'x 374, 383 (6th Cir. 2015) (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)). We will address these elements in turn.

### A.

"[T]he presence of a protected liberty or property interest is a necessary element of a procedural-due-process claim." *Rondigo, L.L.C. v. Casco Twp., Mich.*, 330 F. App'x 511, 523 (6th Cir. 2009). In Plaintiffs' prior appeal, this Court determined that both Guba and Ward have a protected property interest in child support payments that Ward made but Guba never received. *Guba*, 600 F. App'x at 382. We stated that:

> when a child-support order is entered, the named recipient is entitled to it. Guba therefore has a cognizable property interest in these [child support] payments. And Ohio law also establishes that the individual making those payments through the Child Support Agency has a right to expect that those monies will be remitted to the person entitled to receive them, an interest sufficient to qualify as the payor's—here Ward's—property interest in the monies.

*Id.* Accordingly, there is no dispute that Guba has a constitutionally protected property interest in receiving any child support payments that Ward made but Guba never received.

Plaintiffs argue, however, that this Court's decision entitles them to an even broader set of protected interests than merely the right to the child support payments made to the agency pursuant to the child support order. Plaintiffs claim, without analysis or explanation, that they possess a "liberty interest in the right to benefit from the federally and state established child support systems" and a "protected liberty interest in family integrity."

However, "the range of interests protected by procedural due process is not infinite." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 (1972). Fundamental liberty interests protected by the Fourteenth Amendment include those rights that are "objectively 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*,

521 U.S. 702, 720–21 (1997) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325–326 (1937)) (internal citations and quotation marks omitted). Further, a party staking claim to a protected liberty interest must provide "a 'careful description' of the asserted fundamental liberty interest." *Id.* at 721 (quoting *Reno v. Flores*, 507 U.S. 292, 301 (1993)).

Child support is "a highly complex system designed to assure a noncustodial parent's regular payment of funds typically necessary for the support of his [or her] children." *Turner v. Rogers*, 564 U.S. 431, 443 (2011). "These systems often rely upon wage withholding, expedited procedures for modifying and enforcing child support orders, and automated data processing." *Id.* at 444 (citing 42 U.S.C. §§ 666(a), (b), 654(24)). Here, Plaintiffs provide no argument for how child support services are so deeply rooted in our history and implicit in our concept of ordered liberty that neither liberty nor justice would exist if they were sacrificed. *See Washington*, 521 U.S. at 720–21. Nor do they carefully describe the asserted fundamental liberty interest. Therefore, they have not met their burden.

Similarly, Plaintiffs have not carefully articulated a basis for us to conclude that the established liberty interest in family integrity might apply to this case. "There is no doubt that under the constitution, the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (citations omitted). However, nothing in the record indicates that Defendants' actions had any effect on the integrity of Guba and Ward's family. Therefore, we limit our analysis to whether Plaintiffs were deprived of the property right that they held in "child-support payments that Ward made but Guba never received." *Guba*, 600 F. App'x at 381.

B.

The district court granted Defendants' motion for summary judgment because it determined that there was "no evidence in the record that Ward made a payment to the Agency that it did not remit to Guba," and therefore "a reasonable jury could not find that defendants' misconduct deprived the plaintiffs of their protected property interests." *Guba*, 2016 WL 3952119, at *1. Plaintiffs do not dispute that an essential part of their claim is to make a showing that they were deprived of a legally protected liberty or property interest. Rather, they argue that the district court improperly applied the summary judgment standard, and genuine issues of material fact exist as to whether Defendants deprived Plaintiffs of a property interest in the form of child support payments and garnished tax returns.[2]

1. **No reasonable juror could find by a preponderance of the evidence that payments were made by Ward to the Huron CSEA that were not remitted to Guba.**

First, Plaintiffs argue that the testimony of Huron CSEA Investigator Rader creates a genuine issue of material fact as to whether Ward made a payment to the Huron CSEA that Guba never received. Plaintiffs state that Rader was "advised by Plaintiffs Guba and Ward that Ward was making payments into the system, yet Guba was not receiving same." It is true that Rader testified that Ward called her to complain that he made payments to Guba and that he claimed she was not receiving them. However, as the district court correctly noted, evidence at the summary judgment stage must be admissible, and the district court determined that Rader's testimony of Ward's statement is hearsay if brought to prove that Ward made payments to the agency and that Guba never received them. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*,

---

[2] Plaintiffs do not claim to possess a protected property interest in unpaid arrearages that accrued, or would have accrued, pursuant to the child support order. It is also noteworthy that Guba—the custodial parent to whom arrearages were owed—sought to waive Ward's obligation to pay her $17,000 in arrearages in 2012, during the pendency of their struggles with the child support agency.

130 F.3d 1185, 1189 (6th Cir. 1997); *see also Guba*, 2016 WL 3952119, at \*13.  Plaintiffs make no argument as to the applicability of any hearsay exception to Rader's statement, and we find no error in the district court's analysis.

Next, Plaintiffs argue that the following testimony from Ward's deposition creates a genuine dispute of material fact that Ward made a cash payment to the Huron CSEA that Guba did not receive.

Q.  While you were laid off between Tech System and Mickey Mart, did you make any child support payment?

A.  I believe I did.

Q.  Did you make those directly to Huron County CSEA?

A.  Yeah, I think I brought it up there and paid out at Shady Lane.

Q.  Did you ever get receipts for those payments?

A.  I'm sure I did when I went in there and paid, I have no idea whatever happen [sic] to them. I figured they knew what was going on, so.

Q.  Do you have any reason to doubt that Ms. Guba, or any reason to suspect that Ms. Guba did not receive those payments during that time?

A.  Well, there was a couple times I would come in there and make a payment and then she'd call me, like, a week later and asked me, you know, she's be like you know, "Well, where's my money, I thought you made a payment?" And I was like, "I absolutely went up there and made a payment." And then she would call up and they'd say something or another happened and then it would be delayed and she'd get the money, like, a month later, you know.

Q.  When you would make a payment in person at Huron County, do you know how Ms. Guba would receive that payment?

A.  No, that was—that's on her.

Viewed in the light most favorable to Plaintiffs, Ward made payments directly to the Huron CSEA and received a receipt at an unknown date and time.  Further, there were times when money was not remitted to Guba promptly by the Huron CSEA.  However, this testimony would

11

not allow a reasonable juror to find that Ward paid any money to the Huron CSEA that Guba ultimately did not receive. Furthermore, the timeframe referenced in the testimony—between Ward's employment at Tech System and Mickey Mart—occurred before December 2007 and is therefore irrelevant because Plaintiffs concede that they were able to make and receive payments without issue between May 2006 and December 2008.

Later in the deposition, Ward was asked if he received a receipt after making a payment to the CSEA. He responded, "Yes. Usually when I would come out there and give a cash payment they would give me a receipt." However, Ward could not recall or verify any amount paid or even estimated date ranges for when he made cash payments to the Huron CSEA. While this testimony could allow a reasonable juror to conclude that Ward made cash payments to the agency and received a receipt, it would not allow a reasonable juror to find that Guba did not receive such cash payments.

Guba's deposition testimony also is insufficient to allow a reasonable juror to determine by a preponderance of the evidence that she did not receive payments made by Ward to the Huron CSEA. When asked if she had reason to dispute Defendants' claim that all money paid by Ward was disbursed to her, Guba responded, "I don't believe that." Asked if she had any information to support her belief, she said, "I don't . . . Just [Ward's] word that he has gone up there and paid, or when all this started he could—they wouldn't let him pay, so that's why he started paying me." Viewed in the light most favorable to Plaintiffs, this testimony shows only that Guba maintained suspicion that money was being withheld from her by the agency. Plaintiffs "cannot rely on conjecture or conclusory accusations" to survive summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008). Therefore, Guba's testimony

would not allow a reasonable juror to find that any money paid by Ward was not remitted to Guba.

Finally, in regard to allegedly withheld cash payments, Plaintiffs assert that "a reasonable juror could conclude that a paper trail should have been generated by the Agency upon Mr. Ward's cash payments into the system, yet the agency failed to produce same due to its negligence and inability to properly record cash payments." This argument is unpersuasive, as Plaintiffs essentially ask Defendants to carry their burden at the summary judgment stage. *See Celotex Corp.*, 477 U.S. 317 at 323 (there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim") (emphasis in original).

Plaintiffs' assertion is also unsupported by the record. While Plaintiffs presented no documentary evidence showing that any amount of money was ever withheld from Guba by the Huron CSEA, Defendants produced a payment history report that documents monthly payment receipts, obligations, withholdings, and disbursements from the beginning of Plaintiffs' case through February 2013. The payment history report shows that Defendants disbursed all known funds paid into the system by Ward to Guba from 2008 until February 28, 2013. *Guba*, 2016 WL 3952119, at *12. This presumably included cash payments, as Plaintiffs have not challenged the accuracy or comprehensiveness of the payment history report. Nor have Plaintiffs specifically alleged that Ward made a payment after February 28, 2013, when Defendants' payment history report ends. Thus, even assuming that Ward made cash payments to the Huron CSEA, no reasonable juror could find by a preponderance of the evidence that Ward made a cash payment to the Huron CSEA that Guba did not receive.

**2. No reasonable juror could conclude by a preponderance of the evidence that Ward's taxes were intercepted by the Huron CSEA but not remitted to Guba.**

Plaintiffs also argue that the district court failed to account for funds intercepted from Ward's tax returns by the Huron CSEA. They assert that "[a]ny funds generated by the interception of Mr. Ward's tax refund was deposited into Huron County's Child Support system, and was to be paid by the Agency to Ms. Ward, yet never was." Again, Plaintiffs provide no documentary evidence that Ward's taxes were intercepted, and this argument relies entirely on deposition testimony.

At her deposition, Guba recollected a call she placed to the Huron CSEA to inquire about the status of Ward's tax returns. She stated that, "my son came home and told me that his dad received an income tax refund." When Guba stated that she had not received any payment from Ward's taxes, a Huron CSEA agent replied that she "was supposed to receive the money" because it was "in the system." However, on this call Guba did not state that she never received money from any tax intercept, only that she was calling because she hadn't received it yet. Further, according to CSEA attorney Carman, this call was placed in January 2009. Defendants' payment history report from that year shows that a total of $9,363 was collected from Ward in 2009 and all $9,363 was disbursed to Guba. We are left without an explanation for why the 2009 payment history produced by Defendants would not include any such tax intercepts. Therefore, a reasonable juror could not conclude that an intercept of Ward's taxes occurred in 2009 that was not paid to Guba.

In fact, Ward never even alleged in his deposition that his tax return was intercepted to pay child support. The only comment Ward made was that, "my tax return stuff have [sic] been lost over the years and I wouldn't even know how to go about getting them." Altogether, and viewed in the light most favorable to Plaintiffs, the uncorroborated deposition testimony of

14

Guba, Ward, and Carman would not allow a reasonable juror to find that Ward had his taxes intercepted by the Huron CSEA and that the agency failed to remit those funds to Guba.

At summary judgment, Plaintiffs were required to produce evidence on each essential element of their claim, but failed to do so. *See Celotex Corp.*, 477 U.S. at 323. Accordingly, the district court did not err by granting Defendants' motion for summary judgment because there is "no evidence in the record that Ward made a payment to the Agency that it did not remit to Guba," and therefore "a reasonable jury could not find that defendants' misconduct deprived the plaintiffs of their protected property interests." *Guba*, 2016 WL 3952119, at *1.

## V.

Because Plaintiffs did not demonstrate that they were deprived of a protected property interest, they cannot prevail on each element of their procedural due process claim. Therefore, we **AFFIRM** the decision of the district court.