*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WENDY HUGHLETT, et al.,

        *Plaintiffs-Appellants,*

     *v.*

JACQUELINE ROMER-SENSKY, et al.,

        *Defendants-Appellees.*

No. 05-3299

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00476—James L. Graham, District Judge.

Argued: March 14, 2006

Decided and Filed: July 6, 2006

Before: DAUGHTREY and McKEAGUE, Circuit Judges; McCALLA, District Judge.[*]

---

## COUNSEL

**ARGUED:** Judith B. Goldstein, EQUAL JUSTICE FOUNDATION, Columbus, Ohio, for Appellants. Henry G. Appel, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellees. **ON BRIEF:** Judith B. Goldstein, EQUAL JUSTICE FOUNDATION, Columbus, Ohio, Connie F. Zemmelman, LAW OFFICE OF CONNIE F. ZEMMELMAN, Toledo, Ohio, for Appellants. Henry G. Appel, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellees.

---

## OPINION

---

     McKEAGUE, Circuit Judge. Plaintiffs-appellants Wendy Hughlett *et al.*, are custodial parents who are, or were, entitled to receive child support services pursuant to Title IV-D of the Social Security Act, as administered by the State of Ohio. Plaintiffs filed suit under 42 U.S.C. § 1983, alleging that Ohio government officials, and others, violated their federal statutory rights by implementing a computer system that did not disburse support payments free of administrative costs to the custodial parents within two days of receipt by the state. Further, plaintiffs claim that Ohio officials violated their constitutional procedural due process rights when they implemented the system without notice and a hearing.

---

[*] The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

The district court granted defendants' motion for judgment on the pleadings. For the following reasons, the ruling of the district court is affirmed.

## I. BACKGROUND

Plaintiffs filed suit on May 23, 2001, alleging that defendants Jacqueline Romer-Sensky, Arnold Tompkins, Wayne Sholes, Jo Ann Davidson, American Management Systems, and BankOne N.A., violated plaintiffs' rights to receive child support payments in a timely fashion and without cost as required by Title IV-D of the Social Security Act, as amended by the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996 ("P.R.W.O.R.A.").[1] Plaintiffs allege that defendants knowingly:

> spent millions of tax dollars to create and implement a statewide child support collection and payment system which does not, and to this day cannot, operate in compliance with federal and state standards intended to benefit Ohio families by protecting their right to receive the money that belongs to them timely, fully, reliably, and without cost or charge.

First Amend. Compl. 3, 6, JA 70. Plaintiffs claim that the officials violated provisions of Title IV-D of the Social Security Act, 42 U.S.C. §657(a)(3) and its implementing regulations, resulting in the regular appropriation of child support payments belonging to the plaintiffs through illegal administrative fees, and the retention of monies collected for the benefit of the recipients beyond the two-day limit dictated by statute.

In response, the defendants filed a motion for judgment on the pleadings, claiming *inter alia*, that defendants were entitled to qualified immunity. On January 22, 2002, the district court rendered the defendants' motion moot, ruling that their claim of qualified immunity entitled the plaintiffs to come forward with additional facts to overcome the affirmative defense. Plaintiffs filed their first amended complaint on March 8, 2002. The district court then granted defendants' motion for judgment on the pleadings on July 1, 2002, finding that plaintiffs did not plead their claims with the specificity required under *Veney v. Hogan,* 70 F.3d 917, 921 (6th Cir. 1995). Plaintiffs appealed this decision. On March 4, 2004, this court held that plaintiffs had failed to state a claim against defendants for the misappropriation of child support arrearages;[2] however, remand was necessary to determine whether the defendants had stated a cognizable due process or § 1983 claim, because the heightened *Veney* standard employed by the district court was abrogated by *Goad v. Mitchell*, 297 F.3d 497, 505 (6th Cir. 2002). *See Hughlett v. Romer-Sensky,* 98 Fed. App'x 360, 366 (6th Cir. 2004). This court offered no opinion as to the validity of these claims, stating "we decline to consider in the first instance whether consistent with *Blessing* and *Gonzaga*, these provisions confer federal rights enforceable under § 1983." *Id*. at 365-66.

On remand, the district court granted defendants motion on the pleadings on January 31, 2005, finding that: 1) the federal statutes in question did not confer a private right; 2) there was no procedural due process violation; and 3) defendants were entitled to qualified immunity. This timely appeal followed.

---

[1] Only two of the original defendants remain, Jacquelyn Romer-Sensky and Arnold Tompkins. Both are former directors of the Ohio Department of Job and Family Services ("ODJFS").

[2] In dismissing the arrearages claim, the court found that none of the plaintiffs themselves had ever received public assistance, and none claimed that the state improperly withheld any arrearage payment to which they were entitled. *See Hughlett*, 98 Fed. App'x at 365.

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court exercised jurisdiction pursuant to 28 U.S.C.§ 1331, because the § 1983 claims are civil actions alleging violations of Title IV-D of the Social Security Act, 42 U.S.C. § 651, *et seq.,* and the Constitution.  This court has jurisdiction pursuant to 28 U.S.C. § 1291, because the district court entered a final judgment in this action on January 31, 2005.

This court reviews *de novo* a district court's grant of judgment on the pleadings.  *See E.E.O.C. v. J. H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001).  "The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  *Id.*  Upon review, we must construe the complaint in the light most favorable to the plaintiffs,  accepting  all of  the complaint's factual allegations as true, and decide whether the plaintiffs can prove no set of facts in support of their claim that would entitle them to the requested relief.  *See Penny/Ohlmann/Nieman, Inc., v. Miami Valley Pension Corp.,* 399 F.3d 692, 697 (6th Cir. 2005).

The Federal Rules of Civil Procedure set the general rules for pleading.  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  To withstand summary disposition, the complaint must contain "either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 88 (6th Cir. 1997).  Review is limited to the determination of whether the plaintiffs have sufficiently pleaded a complaint, thereby entitling them to offer evidence in support of the claim.  *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

## III. ANALYSIS

To establish liability under § 1983, a citizen must prove that an individual, acting under color of state law, caused the deprivation "of any rights, privileges, or immunities secured by the Constitution and laws."  *Id.*  In *Maine v. Thiboutot,* the Court found that §1983 safeguards certain rights conferred by federal statutes, as well as federal constitutional rights.  448 U.S. 1, 4 (1980).  However, the plaintiff must assert the deprivation of a federal *right*, not just the violation of a federal *law*.  *See Blessing v. Freestone,* 520 U.S. 329, 340 (1997).  Here, plaintiffs allege a violation of both a statutory right and a constitutional right as grounds for liability under § 1983.  Defendants raise qualified immunity as an affirmative defense.

### A.  Violation of a Statutory Right

Plaintiffs claim that 42 U.S.C. §§ 657(a) and 654(b), when read together, create individual rights enforceable through § 1983.  In particular, plaintiffs urge that the statutory language creates a binding obligation on the States to provide full distribution of received payments within two days of receipt to the custodial parents, the intended beneficiaries of the statutes.

The district court found that Congress did not create an enforceable individual right when it enacted these provisions.  Instead, the court found that the provisions were intended to be instructive to the state agencies, and that the Title IV-D enforcement scheme militates against the finding of enforceable individual rights.  *Hughlett v. Romer-Sensky,* No. 01-CV-476 at 12-13 (S.D. Ohio Jan. 31, 2005) (hereinafter "slip op.").  In so finding, the court agreed with the Eighth Circuit's ruling in *Walters v. Weiss.*  In *Weiss*, the court found that § 657(a) did not require strict compliance for the distribution of collected support, and that it was not intended to confer an individual right to payments free of administrative costs.  392 F.3d 306, 313 (8th Cir. 2004).  Plaintiffs appeal this decision of the district court.

To decide whether these provisions give rise to individual rights enforceable through § 1983, we look at the language of the statute to decipher congressional intent. In *Blessing v. Freestone,* the Court set out the following three-step inquiry to determine whether a statute gives rise to a federal right:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory terms.

520 U.S. 329, 340 (1997) (internal citations omitted).

Later, in *Gonzaga University v. Doe*, the Supreme Court clarified the first *Blessing* inquiry, ruling that it is not enough for a plaintiff to fall "within the general zone of interest that the statute is intended to protect." 536 U.S. 273, 283 (2002). "Anything short of an unambiguously conferred right" will not support a cause of action under § 1983. *Id.* at 282. The Court explained that although the first *Blessing* inquiry requires a determination as to whether Congress intended the provision to *benefit* the plaintiff, it is only the violation of a conferred *right* that gives rise to an action under § 1983. "[I]t is *rights*, not the broader or vaguer 'benefits' or 'interests' that may be enforced under [Section 1983]." *Id.* at 283; *accord Harris v. Olszewski*, 442 F.3d 456, 460 (6th Cir. 2006).

The *Gonzaga* Court engaged in a three-part analysis to decide whether a statute created an actionable right. First, the statute must contain rights-creating language that is unmistakably focused on the individuals benefitted. *Gonzaga*, 536 U.S. at 287. Second, the statute must have an individual focus, rather than a systemwide or aggregate focus. *Id.* at 288. And third, the statute must lack an enforcement scheme for aggrieved individuals. *Id.* at 290.

### 1. Application of Blessing *and* Gonzaga

The plaintiffs claim that 42 U.S.C. § 657(a)(3) and 42 U.S.C. § 654b(c)(1), when read together, confer individual rights. The provisions state, in relevant part:

> a) In general
> Subject to subsections (d) and (e) of this section, an amount collected on behalf of a family as support by a State pursuant to a plan approved under this part shall be distributed as follows:
> \* \* \*
> > (3) Families that never received assistance
> >
> > In the case of any other family, the State shall distribute the amount so collected to the family.

42 U.S.C. § 657(a)(3).

\* \* \*

> (c) Timing of disbursements
> (1) In general
> Except as provided in paragraph (2), the State disbursement unit shall distribute all amounts payable under section 657(a) of this title within 2 business days after receipt from the employer or other source of periodic income, if sufficient information identifying the payee is provided. The date of collection for amounts collected and distributed under this part is the date of receipt by the State disbursement unit, except

that if current support is withheld by an employer in the month when due and is received by the State disbursement unit in a month other than the month when due, the date of withholding may be deemed to be the date of collection.

42 U.S.C. § 654b(c)(1) .

### 2. *The Statute Does Not Confer Individual Rights*

The statute does not contain the individually focused, rights-creating language necessary to confer an individual right. Section 657(a) identifies a family as the ultimate beneficiary of the collected monies: "Subject to subsections (d) and (e) of this section, an amount collected *on behalf of a family* as support by a State pursuant to a plan approved under this part shall be distributed as follows . . . ." *Id.* (emphasis added). However, the provision is *directed* toward the administering body and describes the methods that must be in place for the collection and distribution of support payments. The district court properly found that the statute is intended to provide instruction to the States and does not contain the rights-creating language necessary to create an enforceable individual right.[3] "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quoting *California v. Sierra Club,* 451 U.S. 287, 294 (1981)).

Likewise, § 654b(c)(1) is a clear directive to the States, and does not create an enforceable individual right to receive funds within a certain period of time.[4] "[T]he *State* disbursement unit *shall distribute* all amounts payable under section 657(a) of this title *within 2 business days after receipt* . . . ." *Id.* (emphasis added). Plaintiffs' assertion that these provisions create enforceable individual rights to receive child support within a certain time frame and without the imposition of administrative fees is misguided. The disbursement of funds within two days pursuant to §654b(c)(1) is a clear instruction to the States, not a grant of rights to individuals.

With regard to the alleged right to receive payments free of administrative costs, the statute is silent. Plaintiffs have not identified any statutory provision that unambiguously states that child support must be forwarded without imposition of administrative fees. The language of these provisions does not create individual rights, as they are defined in *Gonzaga*.

### 3. *The Statute Has an Aggregate Focus*

The Supreme Court has ruled that "substantial compliance" provisions in Spending Clause legislation are inconsistent with individually enforceable rights, and indicate an aggregate or system-wide focus. *See Blessing,* 520 U.S. at 343. ("Far from creating an *individual* entitlement to services, the [substantial compliance] standard is simply a yardstick for the Secretary to measure the

---

[3]The district court discussed the holding of *Walters v. Weiss*, 392 F. 3d 306 (8th Cir. 2004). In *Walters*, the Eighth Circuit found that § 657(a) reflects some congressional intent to confer a benefit on the custodial parents. However, the Eighth Circuit found that the right that the plaintiffs asserted, i.e., the right to have the support payments distributed in strict compliance with § 654b(c)(1), was not so unambiguously stated "as a binding obligation on the states and, moreover, is too vague and amorphous for judicial enforcement. We therefore hold that § 657(a) does not create an individually-enforceable federal right." *Id.* at 313.

[4]The district court also found that plaintiffs failed to state a claim under § 657 and § 654b(c)(1), because they failed to allege in their amended complaint that "sufficient information identifying the payee" was provided, as required in the provision. However, we note that this court previously ruled that the "amended complaint alleged that plaintiffs had the right to receive distribution of all collected support payments belonging to them (without regard for whether they had previously received assistance) within two business days of receipt by the state and without deduction of administrative fees." *Hughlett,* 98 Fed. App'x at 365. Because we agree with the district court that these provisions create no enforceable individual rights, it is unnecessary to address this issue.

*systemwide* performance of a State's Title IV-D program."); *see also Gonzaga,* 536 U.S. at 288 (substantial compliance standard indicates that the statute has an aggregate focus rather than an individual focus).

Here, the district court properly found that the Title IV-D enforcement scheme militates against the conferral of enforceable individual rights. Under the scheme, the Secretary of Health and Human Services is required to review the information submitted by the State agencies to determine compliance under the statutes pursuant to § 652(a)(4). According to the implementing regulations, state agencies like ODJFS are required to demonstrate compliance with the statutory requirement for disbursement of child support in seventy-five percent of the cases during any audit period. 45 C.F.R. § 305.63. If ODJFS fails to meet this substantial compliance standard, the Secretary may reduce the funding to Ohio by up to five percent. 45 C.F.R. § 305.61. This scheme typifies the remedies found in spending legislation. "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the state." *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28 (1981).

The district court's ruling is consistent with Supreme Court precedent and Title IV-D. In *Gonzaga*, the Court held that provisions of the Family Educational Rights and Privacy Act (FERPA) do not create enforceable individual rights. *Id.* at 287. Instead, the Act is enforceable through the establishment of an office and a review board to manage FERPA violations. *Id.* at 273. The Secretary of Education can terminate federal funding if a recipient school does not substantially comply with any FERPA regulation, and the compliance cannot be voluntarily secured. *Id.* In response to the plaintiffs' challenge that the FERPA provisions created individual rights, the *Gonzaga* Court stated that "[u]nless Congress 'speaks with a clear voice' and manifests an 'unambiguous' intent to confer individual rights, *federal funding provisions provide no basis for private enforcement by § 1983.*" *Gonzaga*, 536 U.S. at 273-74 (emphasis added). The Court explained that spending legislation is generally not intended to confer individual rights enforceable under § 1983. *Id.*

In the few instances when the Court has found an individual right enforceable under § 1983 within spending legislation, the provisions conferred specific and definite monetary entitlements on the plaintiffs, and the agency responsible for the enforcement of the requirements provided no mechanism for the plaintiffs to bring their complaints. *See id.* at 280 (discussing *Wright v. Roanoke Redev. & Hous. Auth.,* 479 U.S. 418 (1987), and *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498 (1990)). This is not the case here. There are no specific, definite, monetary entitlements conferred on plaintiffs in this case.

### 4. The Statute Requires that the States Implement a Remedial Scheme

The district court found that there are administrative remedies available for redress of plaintiffs' alleged injuries, pursuant to 45 C.F.R. § 303.35(a). This regulation requires States to implement an administrative complaint procedure "when there is evidence that an error has occurred or an action should have been taken on their case." *Id.* Ohio has implemented such a remedial scheme. *See* OHIO ADMIN. CODE §§ 5101:6-8 and 5101:6-9. Pursuant to OHIO ADMIN. CODE §5101: 6-3-01(B)(4) and (5), a custodial parent may request a hearing when child support payments have not been properly distributed or disbursed. Available review procedures include the right to an administrative appeal, as well as judicial review of the administrative decision. *Id.* at § 5101: 6-8-01(A). The presence of an administrative remedial scheme for plaintiffs' complaints indicates that Congress intended aggrieved individuals to pursue administrative and State court remedies, rather than asserting a claim under § 1983.

Having found that §§ 657(a) and 654b(c) do not confer individual rights actionable under § 1983 according to the first *Blessing* inquiry, as clarified in *Gonzaga*, we find that it is unnecessary to consider the remainder of the inquiry.  We next consider plaintiff's due process claim.

### B.  Violation of Due Process

Plaintiffs allege that defendants violated their due process rights when they implemented the Support Enforcement Tracking System ("SETS"), the computer system designed to comply with Title IV-D's requirements for collection and disbursement of child-support funds.  The plaintiffs claim that Jacquelyn Romer-Sensky and Arnold Tompkins, acting directors of the ODJFS, approved the implementation of a system that they knew would deprive plaintiffs of a property interest, without providing them notice and an opportunity to be heard.

The district court found that plaintiffs failed to allege a viable due process violation, because they were unable to demonstrate a property interest entitling them to due process protection.  *See Hughlett,* slip op. at 17.  The court also found that the statute governing the implementation of the SETS program did not create an individual enforceable right.  Moreover, it determined that even if the plaintiffs had a property right, they were unable to show that they were entitled to predeprivation notice and hearing, or that the postdeprivation remedies were inadequate.

On appeal, plaintiffs maintain that the district court erred by not allowing additional discovery concerning the procedural due process claim, in violation of this court's earlier ruling in this case.  Further, they assert that the district court erred when it failed to recognize plaintiffs' property rights in the reliable and timely receipt of their child support payments. Plaintiffs state that the district court erred in finding that they failed to allege sufficient facts to show that they were entitled to predeprivation notice and hearing, or that postdeprivation remedies suppled by the state are inadequate.  We find these claims to be without merit.

### 1. Additional Discovery is Not Warranted.

Plaintiffs claim that the district court ignored this court's March 4, 2004, order by not allowing additional discovery concerning the due process claim.  The plaintiffs rely on this court's statement that "the record before us is not sufficiently developed to allow us to affirm [the dismissal of the due process claim] based on the district court's conclusory alternative finding" in support of their discovery demands.  *Hughlett,* 98 Fed. App'x at 367.

This court remanded this case primarily because the district court rendered judgment on the pleadings using an abrogated heightened pleading standard.  In our earlier decision, we stated that "[i]t is the district court's heavy reliance on *Veney* that requires us to reverse and remand for further consideration of whether plaintiffs have stated a claim for violation of due process and whether defendants are entitled to qualified immunity on the due process claims." *Id.* at 366. While we were unwilling to affirm on an alternative theory that was not well-developed in the district court's first opinion, that did not foreclose the possibility that the district court could enter judgment on the pleadings on remand using the proper standard.  Therefore, the district court did nor err when on remand, it ordered the defendants to file a new motion for judgment on the pleadings, and stayed discovery until it had entered its ruling on that motion.

### 2. No Property Right

To determine whether a due process violation has occurred, the court must first decide whether plaintiffs had a property right that entitled them to procedural protections.  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985).  Once a property right is established, the process that is due is then determined.  *Id.* at 541.  The procedural inquiry requires a three-pronged analysis. The court must determine:  (1) the private interest that will be affected by the governmental action;

(2) the risk of an erroneous deprivation of such interest through the procedure used along with the probable value, if any, of requiring additional or substitute procedures; and (3) the governmental interest involved, including the burdens that the additional or substitute procedures would create. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

The district court properly found that plaintiffs failed to establish a property interest entitling them to procedural due process. In *Bd. of Regents of State Colleges v. Roth,* the Court ruled that in order to have a property interest in a benefit, the individual must have a "legitimate claim of entitlement to the benefit." 408 U.S. 564, 577 (1972). The entitlement to a benefit must be grounded in some statute, rule, or policy. *Id.* at 576. The plaintiffs here allege that "[t]he interest of an individual in the reliable and timely distribution and receipt of child support is a statutorily created property interest protected by the Fourteenth Amendment."

However, the alleged procedural due process violation is focused on plaintiffs' right to notice and hearing before the implementation of the SETS program. The plaintiffs have failed to identify any federal statutes, policies, or rules giving rise to a property interest in the design or implementation of the Title IV-D computer system. Further, in *Blessing*, the Court found that the complex requirements for the implementation of a computer system pursuant to Title IV-D were not meant to confer *individual rights* to computer services, but were intended to improve the States' child support enforcement procedures. *Blessing*, 520 U.S. at 344-45. As in *Blessing*, the plaintiffs here have failed to identify any statute, policy, or rule creating a property right entitling them to due process.

### 3. The Plaintiffs Have Adequate Pre- and Postdeprivation Protection

Even assuming arguendo that plaintiffs have a property right entitling them to some procedure, they are unable to prevail on the second part of the due process inquiry. The plaintiffs contend that they were deprived of the "time value of money" because the SETS system was not in complete compliance with the two-day distribution requirement in § 654b. As the district court noted, this private interest is minimal compared to the governmental burdens created by a notice and hearing requirement for a decision such as this. "A prior notice and hearing requirement for each agency decision which might potentially impact on the distribution of benefits administered by the agency would slow the bureaucratic process to a standstill." *Hughlett,* slip op. at 19. In addition, the district court stated "that plaintiffs are not without protection concerning the implementation and operation of SETS. The automated data processing system at issue is mandated by OHIO REV. CODE ANN. § 31250.07." *Id.* Any rule-making concerning the use of the system or the operation of child support enforcement is subject to the notice and comment requirements of OHIO REV. CODE ANN. Chapter 119. *Id.* This "notice and comment" provision provides adequate predeprivation protection.

Plaintiffs have also failed to show that available postdeprivation remedies are inadequate. The district court stated "[w]hen an individual is deprived of a property interest by the state due to the negligent or intentional unauthorized failure of the state's agents to follow state procedure, due process is satisfied if the person had access to meaningful postdeprivation process." *Hughlett,* slip op. at 18 (citing *Hudson v. Palmer,* 468 U.S. 517, 532-33 (1984)).

Plaintiffs argue that the district court misread *Hudson*, because a "postdeprivation state remedy does not satisfy due process where the property deprivation is effected pursuant to an established procedure." Appellant's Br. at 31 (citing *Hudson,* 468 U.S. 517 (1984)). Plaintiffs neglect to consider *Hudson*'s instruction that a postdeprivation procedure may remedy "either the necessity of quick action by the State *or the impracticality of providing any meaningful predeprivation process . . . .*" *Hudson,* 468 U.S. at 531. The district court properly found that a predeprivation notice and hearing requirement would be impractical for this type of administrative decision.

Further, Ohio has established an administrative review process for child support recipients who want to contest the amount or the manner of delivery of their support payments. OHIO ADMIN. CODE § 5101:6. Under the code, a custodial parent may request a hearing if payments have not been properly distributed, or are not issued in a timely fashion. § 5101: 6-3-01 (B) (4) and (5). The review procedure includes "the right to an administrative appeal from the decision of the hearing officer and the right to judicial review of the decision rendered in the administrative appeal." *Hughlett,* slip op. at 18 (citing OHIO ADMIN. CODE §§ 5101: 6-8 and 5101: 6-9). The plaintiffs have failed to show that this postdeprivation remedy is inadequate to address their claims.

The district court did not err when it found that plaintiffs failed to allege facts sufficient to show that they were entitled to predeprivation notice and hearing, or that postdeprivation remedies supplied by the State are inadequate.

## C. Qualified Immunity

On appeal, plaintiffs claim that the district court erred when if found that defendants were entitled to qualified immunity, because plaintiffs' allegations establish statutory and constitutional violations.

Officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Fisher v. Harden,* 398 F.3d 837, 842 (6th Cir. 2005). Qualified immunity is an affirmative defense that must be pleaded by the defendant official. *See Harlow,* 457 U.S. at 815. In order to overcome the qualified immunity defense, the plaintiff must show that: (1) taken in the light most favorable to the plaintiff, the allegations show that the official violated the plaintiff's constitutional or federal statutory rights; and (2) that the right was clearly established at the time of the alleged violation. *Saucier v. Katz,* 533 U.S. 194 (2001). Here, the inquiry is limited to the first step, because the district court properly found that defendants did not violate any of plaintiffs constitutional or statutory rights and that defendants are entitled to qualified immunity.

## IV.  CONCLUSION

For the aforementioned reasons, the decision of the district court is **AFFIRMED.**