NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0070n.06

No. 14-3022

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DAWN GUBA; SHAWN WARD, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | **FILED** |
| | ) | Jan 22, 2015 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| HURON COUNTY, OHIO, HURON COUNTY | ) | ON APPEAL FROM THE |
| DEPARTMENT OF JOB AND FAMILY | ) | UNITED STATES DISTRICT |
| SERVICES, HURON COUNTY CHILD SUPPORT | ) | COURT FOR THE |
| ENFORCEMENT AGENCY, JILL NOLAN, | ) | NORTHERN DISTRICT OF |
| LENORA MINOR, and HEATHER CARMAN, as | ) | OHIO |
| agents for Huron County, | | |
| | | |
| Defendants-Appellees. | | |

BEFORE:     SILER, BATCHELDER, and DONALD, Circuit Judges

ALICE M. BATCHELDER, Circuit Judge.  This case arises out of the futile efforts of

Plaintiffs Dawn Guba and Shawn Ward to make and receive child-support payments through the

Child Support Enforcement Agency of Huron County, Ohio.  Plaintiffs are before us on appeal

of the district court's order dismissing all of their claims under Federal Rule of Civil Procedure

12(b)(6).  For the reasons that follow, we affirm in part, reverse in part, and remand for further

proceedings consistent with this opinion.

**I.**

Dawn Guba and Shawn Ward were married in 1996 in Huron County, Ohio.  [R.13

(Amend. Compl.), Page ID 141.]   Six years later, in 2002, the couple divorced in Ingham

1

County, Michigan. [*Id.*] At that time, they mutually agreed to an Ingham County Circuit Court child-support order that directed Ward to pay a certain amount of his income each month to Guba for child support. [R.14-1 (Ingham child support order), Page ID 190.] In 2006, Guba moved back to Huron County, Ohio. Sometime thereafter, she and Ward attempted to obtain child-support services from Huron County, the Child Support Enforcement Agency (CSEA), and the Huron County Department of Jobs and Family Services (DJFS), to transfer and register the foreign child-support order from Ingham County to Huron County, pursuant to Ohio law. [R.13, Page ID 141.] On May 2, 2006, the Court of Common Pleas of Huron County entered an order directing that the child-support orders from Ingham County be transferred to Huron County for the collection, distribution, and enforcement of Plaintiffs' child-support obligations. [*Id.*, R.14-2 (Huron county court order), Page ID 196-210.]

From the date of the common pleas court order until 2008, Plaintiffs received child-support services from Huron County and the CSEA without any problems. [R.13, Page ID 141-42.] During this time, on October 16, 2006, the court granted Ward a modification of the support order—reducing his payments from $942.00/month to $558.80/month—due to a change in his financial circumstances. [R.20-5 (common pleas court modification), Page ID 261-65.] In November 2008, Ward, with the assistance of the CSEA, attempted to modify the support order a second time, but the court denied his motion in May 2009, finding that the May 2006 order was improperly filed and therefore unenforceable. [*See* R.20-6 (May 2009 order), Page ID 276-77; R.13, Page ID 142.] Before the court's May 2009 decision, CSEA employee Heather Carman, without notifying Plaintiffs, attempted to vacate the May 2006 order and re-register the foreign

support order, but her motions were dismissed for "lack of prosecution."[1]  [R.13, Page ID 142-43.]

Carman again attempted to register the foreign support order in June 2009, but that motion was initially "continued for further hearing" in September due to Carman's failure to comply with Ohio Rev. Code § 3115.48(A)(2), which requires written consent from both parties. [*See* Ohio Rev. Code § 3115.48; R.20-7; R.20-8 (September 2009 orders).]  The court ordered that the parties either "demonstrate compliance with [Ohio Rev. Code] § 3115.48 prior to the next scheduled hearing or [] appear and show cause at the scheduled hearing why the pending motion should not be dismissed." [R.20-7, Page ID 280.]  Although Plaintiffs claim that Carman did not notify them of these proceedings, the court's written order states that the court notified and served them by regular mail on September 8, 2009.  [*Id.*, R.13, Page ID 143–44.]  After a hearing on September 23, 2009, which Plaintiffs did not attend, the court dismissed Carman's motion to register the foreign support order due to her continued failure to abide by Ohio Rev. Code § 3115.48(A)(2).  [R.20-8; R.13, Page ID 144.]  Again, Plaintiffs claim that they were unaware of this hearing, although the court's order indicates that the court served them with a copy of the dismissal order by regular mail on September 29, 2009.  [R.20-8, Page ID 283.]

Plaintiffs assert that in 2009, after the CSEA had stopped forwarding Ward's child support payments to Guba, they called Huron County, the CSEA, and the DJFS on numerous occasions—at least thirty separate occasions over the course of three years—but were "told that there was nothing that could be done for [them]," and that only Ingham County, Michigan, could address their concerns as that county "was the proper forum for their child support issues."

---

[1]The pleadings do not explain how Carman was attempting to vacate the order without Plaintiffs' knowledge, or why this would not be an ex parte communication, given that the outcome of such an attempt would affect Plaintiffs' legal rights and obligations, yet no counsel for Guba or Ward was involved in these attempts.

Guba claims that Carman on one occasion "advised Guba that [Huron County] was unwilling to help either Guba or Ward due to [Huron County's] 'dislike' for [them]." During this time, Ward continued to make support payments to the CSEA, and because those payments were not forwarded to Guba, he also furnished Guba with support money outside of the CSEA procedures.[2] [R.13, Page ID 144-45.]

Finally, in March 2012, Huron County and the CSEA agreed to again attempt to register the foreign support order, but only if Guba and Ward agreed to sign a waiver and supporting affidavits, waiving any and all claims resulting from the improper filing of the May 2006 order. [R.13, Page ID 145-46; R.20-9 (Guba Aff.); R.20-10 (Ward Aff.); R.20-11 (Waiver).] After the Plaintiffs executed the waiver and affidavits in April 2012, Carman again filed a petition to register the foreign support order. [R.13, Page ID 146.] But the order failed to comply with Ohio Rev. Code § 3115.39(A)(2), which requires the submission of relevant support orders together with their modifications, along with the petition. [R.20-12 (June 2012 order), Page ID 296.] The court gave Carman thirty days from the date of its June 4, 2012, order to comply with Ohio Rev. Code § 3115.39(A)(2), and when Carman did not do so, the court dismissed the petition on July 30, 2012. [*Id.*; R.20-17 (June 2013 petition), Page ID 308-10.]

Following the dismissal of the petition, the CSEA sent notice to Ingham County, stating that the Ohio courts had dismissed all actions and closed Plaintiffs' child-support case, and requesting that Ingham County resume enforcement of Plaintiffs' support order. [R. 20-13 (Transmittal), Page ID 298.] A few days later, on August 23, 2012, the Ingham County Friend of Court notified the CSEA that it had closed Plaintiffs' case in 2007 and therefore could not

---

[2]At some point, it appears that Ward became unable to continue to submit payments to the CSEA for distribution, although that date does not appear in the complaint. [*See* Appellant Br., pp. 25-26.]

resume enforcement. [R.20-15 (Friend of Court letter), Page ID 302.] Upon the advice of the Ingham County Friend of Court, Guba contacted the Ohio Attorney General's Office, asking that it investigate the child-support issues with the CSEA; soon thereafter, she requested a hearing before the DJFS. [R.13, Page ID 147.] On the date the DJFS issued its decision—May 3, 2013—the CSEA "agreed to obtain a certified original copy of the [foreign] support order and within thirty days file for a Foreign Support Order." [R.20-16 (State Hearing Decision), Page ID 304.] On June 4, 2013, Carman again attempted to register the foreign support order in the Huron County Common Pleas Court, and at the time of the district court's decision in December 2013 dismissing this case, the motion was still pending. [R.20-17.] According to Plaintiffs' brief on appeal, in January 2014, the motion was denied for failing to file the necessary attachments to evidence Plaintiffs' income for child-support calculation purposes. [*See* Appellant Br., pp. 9–10.]

On March 19, 2013, Plaintiffs filed a complaint in the United States District Court for the Northern District of Ohio against Huron County, the DJFS, the CSEA, and several CSEA employees. The complaint alleges violations of 42 U.S.C. § 1983, both as a standalone count and separately for violation of Title IV-D of the Social Security Act, as well as separate counts claiming violations of the Fourteenth Amendment Due Process Clause and the Fifth Amendment Takings Clause. Plaintiffs also allege several state-law claims, including negligence, conversion, equitable restitution, constructive trust (breach of fiduciary duty), and intentional infliction of emotional distress. The district court granted Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), holding that Plaintiffs' claims were time-barred by the applicable statute of limitations, or alternatively, were precluded by both qualified and statutory immunity, and that the state-law claims failed on the merits in any event.

## II.      Standard of Review

We review de novo a district court's order granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), construing the complaint in the light most favorable to the plaintiffs, accepting their well-pleaded factual allegations as true, and drawing all reasonable inferences in their favor. *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." It must, however, contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim for relief is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility is not the same as probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The sufficiency of a plaintiff's pleadings is a question of law that we review de novo. *Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009). The question of whether a municipality is liable under 42 U.S.C. § 1983 for the actions of its agents is also a question of law that we review de novo, *see, e.g.*, *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 254, 261–63 (6th Cir. 2006), as is a district court's ruling on qualified immunity. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 898 (6th Cir. 2014).

**III.**

The amended complaint claims, among other things, that Defendants, in taking child-support payments from Ward and failing or refusing to remit them to Guba, have violated both Guba's and Ward's rights under the Due Process Clause of the Fourteenth Amendment, an injury for which Plaintiffs can pursue relief under 42 U.S.C. § 1983. We must determine whether, accepting all of Plaintiffs' factual allegations as true, those factual allegations are sufficient to state such a due process claim.

**A.**

We address first the threshold jurisdictional issue of whether Plaintiffs' claims are time-barred. "The Supreme Court has held that § 1983 claims are best characterized as tort actions for the recovery of damages for personal injury and that federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). This action was brought in Ohio, where such claims must "be brought within two years after the cause of action accrues." Ohio Rev. Code § 2744.04. Ordinarily, "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Metz v. Unizan Bank*, 649 F.3d 492, 497 (6th Cir. 2011) (internal quotation marks omitted).

The district court found that Plaintiffs' cause of action accrued in 2009, when Guba stopped receiving child-support payments from the CSEA. Plaintiffs admit in their complaint that they became aware that the payments stopped sometime in 2009, and that during the following three years, they attempted repeatedly to contact the CSEA to resolve this issue. Thus, the district court reasoned, Plaintiffs' claims should have been filed sometime in 2011, but were not filed until March 19, 2013, and therefore the claims are time-barred under § 2744.04.

In their argument to the district court, Plaintiffs raised the continuing violation doctrine—a common-law limited exception to the accrual of a cause of action. *See Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009). According to this doctrine, if the "wrongful act" includes an element that continued to occur beyond a discrete point in time, then only that element of the defendant's tortious act need fall within the limitations period to make the filing of a claim against that defendant timely. *See Sta-Rite Indus., LLC v. Franklin Elec. Co.*, 519 F. App'x 370, 381 (6th Cir. 2013). The district court was dismissive of Plaintiffs' argument, holding that the doctrine applies only to cases involving "discriminatory activity or a demonstrable policy of discrimination." [R.28, Page ID 341.] Because Plaintiffs did not allege any discriminatory activity, the district court reasoned, the theory did not apply to their case. [*See id.*]

We disagree. The district court relied on our decision in *Haithcock v. Frank*, 958 F.2d 671, 677–78 (6th Cir. 1992), which applied the continuing violation doctrine to a case involving discrimination. But nowhere in that opinion did we suggest that the theory applies *only* to discrimination cases. *See id.* While this doctrine "*rarely* extends [] to § 1983 actions," *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (emphasis added), we have held it applies in appropriate contexts. For example, we have applied the continuing violation doctrine to violations of the Takings Clause and the Due Process Clause. *See, e.g.*, *McNamara v. City of Rittman*, 473 F.3d 633, 639–40 (6th Cir. 2007); *Kuhnle Bros. v. Cnty. of Geauga*, 103 F.3d 516, 520–22 (6th Cir. 1997). "[I]n this Circuit, a 'continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Hensley*, 557 F.3d at 697. The doctrine "does not apply to a series of discrete acts,

each of which is independently actionable," but rather, to a "cumulative violation" caused by a "continuing course of misconduct." *Franklin Elec. Co.*, 519 F. App'x at 381 (internal quotation marks omitted); *see also McNamara*, 473 F.3d at 639.

The amended complaint alleges facts that Plaintiffs contend constitute a "continuing violation." First, due to the alleged wrongful conduct of Defendants, Ward's child-support payments to the CSEA have not been forwarded to Guba for more than five years. Defendants had opportunities well into 2013 to correct their mistakes in filing the foreign support order, but did not do so. Second, on June 4, 2012, the county court ordered Carmen to rectify her defective pleading within the following thirty days. She did not do so. This was a discrete act that was part of the due-process violation, bringing the entire violation of the Due Process Clause within the statute of limitations. Had Defendants correctly filed the foreign support order at any point within the previous five years, further injury to Guba and Ward could have been avoided, since, in order to support their child, Ward has had to make payments to Guba outside the county system. Defendants have continuously failed to register the foreign support order correctly or to handle Plaintiffs' case properly, and therefore, Defendants' actions have resulted in a "cumulative violation." *See Franklin Elec. Co.*, 519 F. App'x at 381; *see also McNamara*, 473 F.3d at 639. Third, the amended complaint alleges that the meeting at which Carmen and other county staff insisted that Plaintiffs sign a waiver as a prerequisite to receiving the payments took place in March of 2012. This was another discrete wrongful act that constitutes a *separate* due-process violation, beginning a separate and additional two-year timeframe in which to file suit.

The principal violation of the Due Process Clause was compounded each time Carmen or other county personnel failed to comply with statutory or court-ordered process for registering

the order, and the meeting where Plaintiffs were required to sign the extralegal waiver was a second violation of the Due Process Clause. Because these allegedly unconstitutional actions were either ongoing in 2013 when Plaintiffs filed their lawsuit, or had occurred within the twenty-four months prior to the March 19, 2013, filing of the complaint, Plaintiffs' claims are not time-barred under Ohio Revised Code § 2744.04. *See Franklin Elec. Co.*, 519 F. App'x at 381; *Hensley*, 557 F.3d at 697. We reverse the district court's holding that Plaintiffs' claims are time-barred.

**B.**

Ward and Guba brought this § 1983[3] action against Huron County and its agents and instrumentalities claiming violations of, *inter alia*, the Due Process Clause of the Fourteenth Amendment. Our task is to determine whether the amended complaint contains facts sufficient to state such a claim.

**1.**

To state a claim for denial of due process, Plaintiffs must allege the deprivation of a legally cognizable interest in "life, liberty, or property." We turn first to the question of whether Plaintiffs have a protected property interest in the child-support payments that Ward made but Guba never received. In order to have a property interest protected by the Due Process Clause, the claimant "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972), *quoted in Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). "The entitlement to a benefit must be grounded in some statute, rule, or policy." *Hughlett v. Romer-Sensky*, 497 F.3d 557, 567 (6th

---

[3]Although Plaintiffs' amended complaint pleads § 1983 and due process violations as separate claims, and indeed, does not mention § 1983 in connection with the due process violations, this pleading error is not fatal to our consideration of their claims. *See Johnson v. City of Shelby,* 135 S. Ct. 346, 347 (2014) (per curiam) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim.").

Cir. 2006). Property interests are not created by the Constitution, but rather, "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (internal quotation marks omitted).

Plaintiffs allege—and Defendants do not dispute—that the Ingham County, Michigan, court ordered that Ward pay child support to Guba. Plaintiffs further allege that the Michigan order was transferred to the Huron County, Ohio, Common Pleas Court, that the order was then modified, apparently pursuant to Ohio law, and that for some period of time, Ward made and Guba received child-support payments through the Huron County Child Support Agency. The relevant Ohio law provides:

> On issuing or modifying a support order, issuing any withholding or deduction notice described in section 3121.03 of the Revised Code, or issuing an order described in division (C) or (D) of that section, the court or child support enforcement agency shall require that support payments be made to the office of child support in the department of job and family services as trustee for remittance to *the person entitled to receive payments*, except as otherwise provided in sections 2151.49 , 3113.07 , and 3125.27 to 3125.30 of the Revised Code.

Ohio Rev. Code § 3121.44 (emphasis added). The Ohio Revised Code further defines § 3121.44's "person entitled to receive payments" as the person listed as entitled to receive payments in an Ohio court order for child support. *See id.* § 3119.01(B)(3).

Ohio law thus establishes that when a child-support order is entered, the named recipient is entitled to it. Guba therefore has a cognizable property interest in these payments. And Ohio law also establishes that the individual making those payments through the Child Support Agency has a right to expect that those monies will be remitted to the person entitled to receive

them, an interest sufficient to qualify as the payor's—here Ward's—property interest in the monies.

**2.**

Due process requires that a person have an opportunity to be heard before being deprived of property, or adequate remedies when an erroneous deprivation occurs. "A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (internal quotation marks and citation omitted). The government's infringement of a legally protected interest—such as a property interest—"does not by itself violate the Constitution. Instead, only where the [County] provides no remedy, or only inadequate remedies, to injured [persons] . . . could a deprivation of property without due process result." *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 643 (1999).

"[T]he root requirement" of the Due Process Clause is that generally "an individual [must] be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542 (internal quotation marks omitted). Procedural due process rights are violated equally by intentional or negligent deprivations of property, where the government fails to afford sufficient predeprivation process. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Moreover, we have held that a plaintiff raises a valid due process claim when "additional procedural safeguards should have been provided to better protect his property interest." *Caswell v. City of Detroit Hous. Comm'n*, 418 F.3d 615, 621 (6th Cir. 2005). However, we have recognized that under special circumstances, procedural due process permits the government to deprive a person of property without a predeprivation hearing. *See, e.g.*,

*Harris v. City of Akron*, 20 F.3d 1396, 1403–05 (6th Cir. 1994) (holding that demolishing a residence without prior notice or a hearing did not violate due process because the building inspector determined the home could imminently collapse onto the street and a neighboring residence). "We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (internal quotation marks omitted). In such circumstances, the Supreme Court "has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). This is in part because the "Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectable 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979), *quoted in Higgs v. Bland*, 888 F.2d 443, 449 (6th Cir. 1989).

Analysis of a procedural due process claim requires us to balance (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used," and (3) "the probable value, if any, of additional or substitute procedural safeguards," against "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Hughlett*, 497 F.3d at 566.

We apply a three-step approach here. *See Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). First, is there a legally protected property interest? If so, then second, were Plaintiffs deprived of that property? And if so, then third:

> In situations where the [government] feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking. Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake, or where the [government] is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process.

*Zinermon*, 494 U.S. at 132 (citations omitted). For the reasons already discussed, the first two elements are satisfied.

The third element is difficult to establish because, by itself, "a state actor's negligent act that causes unintended injury to a person's property does not 'deprive' that person of property within the meaning of the Due Process Clause." *Fla. Prepaid*, 527 U.S. at 645. Instead, "deprivation of a constitutionally protected property interest caused by a [municipal] employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, *unless* the [County] fails to provide an adequate postdeprivation remedy." *Zinermon*, 494 U.S. at 115 (emphasis added). But here, as explained below, the employees' actions were not random or unauthorized as the Supreme Court defines those terms.

## C.

The Supreme Court has drawn a clear line: "where the [government] cannot predict and guard in advance against a deprivation, a postdeprivation tort remedy is all the process the [government] can be expected to provide." *Id.* But under the facts alleged in this complaint, this is not a situation that the county government could not have predicted or a deprivation that the

government could not have guarded against in advance. Taking the facts in the amended complaint as true, Plaintiffs were illegally deprived of property as a direct result of county personnel's deliberate actions "at a specific, predictable point." *Id.* at 136.

Further, Plaintiffs allege that they were given no notice of the failures of county personnel to register their original foreign support order, or notice of subsequent proceedings related to that support order. Ohio Rev. Code § 3119.93 provides:

> The termination of a child support order by a court or agency also terminates any applicable withholding or deduction notice or other order issued under section 3121.03 of the Revised Code. With respect to a court child support order, on the termination of any withholding or deduction notice, the court immediately shall notify the appropriate child support enforcement agency that the order or notice has been terminated. If a withholding notice or order is terminated, the agency immediately shall notify each payor or financial institution required to withhold or deduct a sum of money for the payment of support under the order or notice that it has been terminated and that the payor or institution is required to cease all withholding or deduction under the order or notice.

Additionally, Ohio Rev. Code § 3115.18(B)(4) provides that a support enforcement agency must, "[w]ithin two days . . . after receipt of a written notice from a tribunal pursuant to sections 3115.01 to 3115.59 of the Revised Code, send a copy of the notice to the plaintiff." These statutes required Huron County and its child support agencies to notify Plaintiffs of the county's repeated botched attempts to register Plaintiffs' foreign support order and the court's decision that it would no longer enforce that order.[4] But the Plaintiffs allege that CSEA not only failed to notify them of any such errors, the agency also refused to take Plaintiffs' calls and answer their questions regarding the sudden cessation of child-support payments to Guba. [R.13, Page ID 142-45.]

---

[4]Notably, CSEA continued to collect payments from Ward, even though the agency knew that the county court "terminated" the original foreign support order as invalid.

Finally, CSEA has not alleged any "government interest" that would prevent the agency from abiding by the Ohio Revised Code or communicating with Plaintiffs properly. Nor has CSEA alleged any such interest that would obviate its obligation to do so. In short, Plaintiffs have pleaded facts that, if proven, would demonstrate that they were denied any opportunity to get the foreign support order properly registered with the Huron County Common Pleas Court, or to prevent that court from dismissing their case for the county employees' failure to comply with the court's orders relative to proper filing of that order.

The district court held that even if such a deprivation occurred, Plaintiffs could have filed an appeal in the state courts, and thus they had an adequate postdeprivation remedy. But the facts as alleged in Plaintiffs' complaint are sufficient to refute that. We conclude that Plaintiffs' complaint states a procedural due process claim against the Defendants. We therefore reverse the dismissal of Plaintiffs' procedural due process claim.

## IV.

The district court held that none of Plaintiffs' allegations stated any federal constitutional claim against any of the Defendants. As we have already explained, the district court erred in holding that Plaintiffs had not stated a due process claim remediable under § 1983. Turning now to the other constitutional violations Plaintiffs allege against the individual defendants, we find no reversible error in the district court's Rule 12(b)(6) dismissal of the those constitutional claims.[5] Because we affirm the dismissal of those claims, it is not necessary that we consider Defendants' immunity claims with regard to them. Remaining are Plaintiffs' claims that Defendants Huron County and its agencies are liable for the deprivation of due process because

---

[5]Because the district court failed to address Plaintiffs' Takings Clause claim, we address it briefly below.

those Defendants failed to train the employees charged with administering the state laws governing the collection and remittance of child-support payments, and that the deprivation was the result of municipal policy or custom, as well as Plaintiffs' claims that the individual defendants are not entitled to qualified immunity for their actions that caused the due process deprivation.

A municipality may be held liable under § 1983 "only if the challenged conduct occurs pursuant to a municipality's official policy, such that the municipality's promulgation or adoption of the policy can be said to have cause[d] one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (alteration in original) (internal quotation marks omitted). Municipal policies include a policy of inadequate training or supervision and a custom of tolerance of federal rights violations. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Accepting the facts in Plaintiffs' complaint as true for purposes of this motion to dismiss, we conclude that Plaintiffs have pleaded sufficient facts to withstand the motion to dismiss. Six years of repeated failure to comply with the Common Pleas Court's requirements for the registering of the foreign support order is enough to raise the likelihood that the county's inadequate training of the support agencies' employees caused the violation of Plaintiffs' constitutional rights.

Whether the individual defendants are entitled to dismissal of the complaint on grounds of qualified immunity depends upon whether the complaint sufficiently alleges that the actions of these defendants violated a constitutional right clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We conclude that the complaint does contain facts sufficient to show both that Defendants violated Plaintiffs' right to due process with regard to the child-support payments and that a reasonably competent official in Defendants' positions would have known

that her actions violated that right. *See Daily Servs., LLC*, 756 F.3d at 900. Plaintiffs' complaint specifically claims that all of the individual defendants were present at the meeting during which Carman, as a condition of making any further efforts to register the foreign child-support order, extracted from the Plaintiffs an affidavit and waiver that acknowledged the failures of the county agency to register the foreign child-support order and relinquished all claims Plaintiffs might have as a result of those failures. We conclude that these factual allegations are sufficient to withstand the motion to dismiss on qualified immunity grounds.

## V.

Plaintiffs' amended complaint also includes five state-law claims against all Defendants: (1) negligence, (2) conversion, (3) equitable restitution, (4) constructive trust (breach of fiduciary duty), and (5) intentional infliction of emotional distress. The district court held that all Defendants were statutorily immune from Plaintiffs' claims. We have carefully reviewed the district court's order with regard to these claims and conclude that it contains no reversible error either in its findings of fact or its conclusions of law.

## VI.

### A.

Plaintiffs argue that Defendants violated their rights under Title IV-D of the Social Security Act, 88 Stat. 2351 (codified as amended at 42 U.S.C. §§ 651–669b), and claim it as actionable under § 1983. But the Supreme Court held in *Blessing v. Freestone*, 520 U.S. 329, 340–43 (1997), that Title IV-D does not create a federal right enforceable under § 1983.[6] The

---

[6]Although Plaintiffs cited only 45 C.F.R. § 303 in their complaint, they raised the three other statutory provisions in their brief before this court. Because these alleged "rights" must be pleaded with particularity, it is

Court reinforced this conclusion in *Gonzaga University v. John Doe*, 536 U.S. 273 (2002), by replacing the *Blessing* framework for finding implied rights of action with an even more stringent test, *id.* at 283–85.

Accordingly, we affirm the district court's dismissal of this claim.

**B.**

Count III of the amended complaint raises a standalone claim that Defendants violated Plaintiffs' rights under 42 U.S.C. § 1983. [R. 13, at PageID 152.] "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617 (1979); *accord Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). Insofar as the amended complaint seeks to assert § 1983 as a separate claim, that claim must fail.

Count V of the amended complaint—that Defendants' actions are a violation of the Takings Clause—was not addressed by the district court. The Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. That fundamental right applies to the States and their subdivisions through the Fourteenth Amendment. *Chi., B. & Q. R. Co. v. Chicago*, 166 U.S. 226, 241 (1897). We construe this count as raising a claim under § 1983.

---

likely that Plaintiffs forfeited their claims to rights allegedly created by the three statutory provisions raised only in their brief before this court. *See Blessing*, 520 U.S. at 342. But regardless, their argument fails on the merits in any event.

This claim also fails on the merits. Plaintiffs have not alleged a regulatory taking, but rather a physical taking, and a physical taking requires the exercise of eminent domain—the power to take private property for public use. *See McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010). Defendants have not attempted to take Plaintiffs' private property for public use, but rather, have failed to forward Plaintiffs' child support payments in a timely and appropriate fashion. Thus, Defendants have not "physically intrude[d] upon [Plaintiffs'] property." *McCarthy*, 626 F.3d at 284 (internal quotation marks omitted); *see also Wilkins v. Daniels*, 744 F.3d 409, 418 (6th Cir. 2014). In contrast to the government's taking control of property and putting it to public use, the sort of state action found here, in which government deprives a person of property, is examined under the Due Process Clause.

## VII.

For these reasons, we AFFIRM in part and REVERSE in part the judgment of district court and REMAND the case for further proceedings consistent with this opinion.